21636. LANIER v. LANIER, Executor, et al.

138

[redacted]

ARGUED MAY 15, 1962—DECIDED JUNE 25, 1962—
REHEARING DENIED JULY 11, 1962 AND JULY 16, 1962.

[redacted]

*Heyman, Abram, Young, Hicks & Maloof, Herman Heyman, John H. Hicks, Milton Harrison, Wm. G. Grant,* for plaintiff in error.

*Jack P. Etheridge, Lindsay, Simons & Hayes, Eugene R. Simons, W. H. Agnor, Jack P. Turner, Pauline Cousins, John H. Hudson,* contra.

ALMAND, Justice. The judgment under review is one sustaining a general demurrer to a petition for declaratory judgment.

Thomas M. Lanier, by his will as amended by a codicil, left the bulk of his estate to E. S. Lanier, Jr. and James D. Cofer as trustees for the following uses: The testator's wife, Mrs. Ethel G. Lanier, was to be provided a home with the trust paying all expenses incident to the occupation, including all taxes, assessments, bills for utilities and repairs. In addition she was to receive $200 per month for life.

In Item 4 of the codicil a discretionary support trust was created for the benefit of the testator's " . . . wife, or son, or his wife, Annice S. Lanier, or any of his children. . . " Item 4 of the will provided, "Upon the death of my wife and the death of my son, Thomas M. Lanier, Jr., and the death or remarriage of his widow, if any survive him, I desire that my estate be distributed equally, share and share alike, among the children of my son, Thomas M. Lanier, Jr. . . "

Item 9 provided, "If any of my son's children shall not be living at the time provided for the distribution to them of my estate as aforesaid, the share which would have gone to such child, if living, shall then be distributed to the lawful issue of such child, provided, however, that if such child should have died leaving no lawful issue, then that portion of my estate

which would otherwise have been paid to such child shall be distributed equally among my son's other children or descendants of children, per stirpes."

Item 10 provided, "In the event that at the time provided above for the final distribution of my estate, there should be no living children of my son surviving him, nor lawful issue of such children, I desire that my entire estate be distributed equally, share and share alike, among my sisters, Mrs. Cora L. Cofer, Mrs. Velma L. Hewett, and Mrs. Lillie L. Wages, or their descendants, per stirpes, and in the event that either sister should be dead leaving no descendants surviving her, then the share of such sister shall be divided equally, share and share alike between my other two sisters or their descendants, per stirpes."

Item 11 of the codicil provided, "In the event that any beneficiary under my will shall bring any action in any court to contest the validity of my will or of any provision thereof, any bequest or benefit set out in my will in behalf of such beneficiary shall be revoked and rescinded and the share of such beneficiary shall go pro rata to the remaining beneficiaries."

The trustees were to have the power to sell or exchange parts of the testator's estate, retain any part in the form received, invest and reinvest funds which came into the trustees' hands, borrow money upon the estate, purchase securities, lease real estate, settle claims and employ whatever agents, attorneys and employees might be deemed advisable. At the time of the testator's death there were two children of Thomas M. Lanier, Jr. in being.

Thomas M. Lanier, Jr. brought suit against the executors of the will and all possible beneficiaries seeking a declaratory judgment adjudicating the validity of the will. The plaintiff contended that the will violated the rule against perpetuities, that the last legal taker should have the fee simple title vested in him, that the plaintiff and the testator's wife were the heirs at law of the testator, were the last legal takers, and that each was entitled to one-half of the disputed estate in fee. A general demurrer to the petition was sustained and to this order the plaintiff excepted.

■ Before making a determination as to whether or not the

interests created violate the rule against perpetuities we, must first attempt to ascertain the testator's intention as to the disposition of his property. After this determination is made, we shall then apply the rule as stated in *Code Ann.* § 85-707 as follows, "(a) Limitations of estates may extend through any number of lives in being at the time when the limitations commence, and 21 years, and the usual period of gestation added thereafter. A limitation beyond that period the law terms a perpetuity and forbids its creation. When an attempt is made to create a perpetuity, the law gives effect to the limitations not too remote, declaring the others void, and thereby vests the fee in the last taker under legal limitations. . . " If there is any possibility that a contingent event might happen beyond the limits set out by *Code Ann.* § 85-707, then the limitation is too remote.

In examining a limitation over, we must look at it at the time the instrument creating the limitation takes effect. If by deed, then at the time the deed was made. If by will, then at the testator's death.

Item 4 provided, "Upon the death of my wife and the death of my son, Thomas M. Lanier, Jr., and the death or remarriage of his widow, if any survive him, I desire that my estate be distributed equally, share and share alike, among the children of my son, Thomas M. Lanier, Jr. . . "

The will under consideration further created a trust whereby the testator's wife was to receive $200 per month and a home with expenses paid. In addition, she was to receive whatever the trustees felt sufficient for her support. The testator's son, Thomas M. Lanier, Jr., his wife, Annice S. Lanier, and any of his children were to be given amounts the trustees in their sole discretion deemed proper to support them in comfort and happiness. The only interests here created were no more than charges against the estate and did not amount to an estate in themselves. See *Blanchard v. Gilmore,* 208 Ga. 846 (69 SE2d 753).

The plaintiff in error contends that since no antecedent estate was created the remainder must fail. The defendant in error, on the other hand, urges that *Code* § 85-702 eliminated the need of a particular estate and that the interests here created satisfy

that section. It is incorrect to refer to the interest created by Item 4 of the will as a remainder, for certainly there is no antecedent estate that will support a remainder, and while *Code* § 85-702 provides, "No particular estate being necessary to sustain a remainder under this Code, the defeat of the particular estate for any cause does not destroy the remainder. . ." this section presupposes some estate. Thusly, we cannot agree with the defendant in error's contention that the interests created by the instrument here involved amount to an estate so as to bring into play *Code* § 85-702. However, *Code* § 85-502 provides, "An absolute estate may be created to commence in future, and the fee may be in abeyance without detriment to the rights of subsequent remainders. A fee may be limited upon a fee, either by deed or will, where the plain intention of the grantor or testator requires it, and no other rule of law is violated thereby." Such interest if created by will is described as an executory devise within the meaning of *Code* § 113-816 which states, "An executory devise is such a limitation of a future estate in lands or chattels as the law admits in case of a will, though contrary to the rules of limitation in conveyances at common law." In *Irvin v. Porterfield*, 126 Ga. 729, 732 (55 SE 946) this court said: "Even if the gift would have failed under the rule of the common law, as a remainder, for the want of a particular estate to support it, it was still good at common law as an executory devise."

The plaintiff in error relies upon *Overby v. Scarborough*, 145 Ga. 875, 879 (90 SE 67) wherein it is said, "It was early held that where property is devised to A for life, remainder to his widow for life, remainder over on the death of the widow, the ultimate remainder on the death of the widow, *if contingent until that event*, is bad, because A may marry a woman who was not born at the testator's death; and the result is not affected by the fact that A is very old at the testator's death," as authority to invalidate the will now before the court. (Italics ours). The emphasis in the *Overby* case is on the contingency of the vesting at the time of the unborn widow's death.

In the present case, there were two children of the son's in being at the testator's death, and in the *Irvin* case, supra, it was said, "In a devise to children as a class by way of remainder,

children in esse at the death of the testator take vested interests," and further, "This rule applies to an executory devise, as well as to a remainder." See *Bryant v. Green*, 187 Ga. 89 (199 SE 804).

In *Powell v. McKinney*, 151 Ga. 803, 809 (108 SE 231) this court said, "The general rule elsewhere is that where property is devised or bequeathed to one person for life, with remainder over to the testator's children, the latter take a vested interest on the death of the testator, unless there is a clear manifestation of a contrary intent on the part of the testator. [Citations omitted]. In the present case there seems to be no clear manifestation of an intent to postpone the vesting of the title in the remaindermen, and therefore it is to be presumed that the testator intended that the remainder interest should vest at the moment when the will became operative. If there should be doubt on this question, it must be resolved in favor of the earlier vesting." *Code* § 85-708 provides: "The law favors the vesting of remainders in all cases of doubt. In construing wills, words of survivorship shall refer to the death of the testator in order to vest remainders, unless a manifest intention to the contrary shall appear."

In the case sub judice there is no clear manifestation that the testator did not intend for the interest to vest at his death. But on the contrary, a forceful indication that the testator intended for the interests to vest was the fact that the "unborn widow" was to receive nothing from the trust estate either by way of a charge against the estate or a gift in the nature of an estate. While this fact would not alter the "unborn widow" rule so as to validate interest which might vest upon that remote contingency, it is an indication that the interests were to vest at the testator's death for there would be no reason to hold the beneficial interest in abeyance.

The very case the plaintiff relies on to invalidate this will supports the view we take of this case. In the *Overby* case, supra, it was held at page 879, "If the remainder be construed as vested as to children in life when the deed was executed, subject to open and let in after-born children, then the limitation would be good. On the other hand, if the remainder be construed as limited to the children of J. T. Duncan at the time of

the death of a wife by a future marriage, it would be contingent and too remote. . . Two of the children were in life when the deed was executed, two were subsequently born, and *all would take vested remainders under this rule.*" (Italics ours).

Of course, there is a contingency that there might be after-born children who would take vested interests at their birth. However, should this vesting be so remote as to violate the rule against perpetuities, the interest would have to fail. See 41 Am. Jur. 96, Perpetuities, § 52. But in a case, such as the instant one, the vesting must occur within a life in being at the time of the testator's death, namely that of the son, Thomas M. Lanier, Jr., so there is no possibility that a vesting will occur which will be so remote as to violate the perpetuities rule.

■ It is argued by the plaintiff in error that, even though this court should find a vesting within the rule, the interest should be voided because possession is to be postponed to a time that might be longer than that allowed. With this contention we cannot agree. The correct rule is stated in 70 CJS 610, Perpetuities, § 28 as follows: " . . . beneficial interests under or after a trust, which are vested immediately or will necessarily vest, if ever, within the period prescribed by the rule, are good, even though the trust may continue  beyond such time, . . ." As pointed out above, the vesting in this case cannot possibly violate the rule.

In *Love v. McManus*, 208 Ga. 447 (67 SE2d 218), a testator made a gift by way of a trust of a remainder to "B" and "C", children of the testator, and in the next paragraph of the will provided that, if "B" or "C" does not live until the time for payment to him, leaving children surviving him, then such children would take the parent's share. It was there held that "B" and "C" had a defeasible vested interest, subject to being divested by their death without children before the death of "A", that the instrument created a valid subsisting executory trust, and that the legal title would remain in the trustees until the purposes of the trust were accomplished. Such is the case now before this court. In *Singer v. First Nat. Bank &c. Co.*, 195 Ga. 269 (24 SE2d 47), this court held, "A grant, supplemented by a devise, made in trust for the benefit of the chil-

dren of A, born and to be born, with a provision that the trust shall continue until the youngest child, born and to be born, shall attain the age of twenty-five years, and that should any child of A die before attaining that age, then and in that event the interest of such child shall go and belong to other named beneficiaries, set up a valid executory and shifting trust in favor of such children of A as were in life at the time the deed became absolute and the supplementary devise became effective, but subject to open for the purpose of taking in children who might thereafter be born to A; and such a trustee would hold the title at least until the death of A, in order to determine who the final beneficiaries would be."

■ Since we have above held that the testator intended a vesting at the time of his death, the grandchildren have a fee interest subject to being divested if they are not living at the time of distribution in accordance with Items 9 and 10 of the will. Therefore, the next question for determination is, does a condition subsequent tie up property to the extent that public policy demands that those conditions which might possibly occur beyond the period set out in *Code Ann.* § 85-707 should fail? It is the defendant in error's contention that the rule should not be applied to a condition subsequent. While there are some statements to the effect that the rule has no application to a condition subsequent (Congregational Church v. Everitt, 85 Md. 79, 36 A 654, 655; 41 Am. Jur. 73, Perpetuities, § 29), it would seem that the more logical view is that a condition subsequent is subject to the rule, since it places property in extra commercium. The only condition which seemingly causes trouble is the one providing that the children be in life at the time of distribution of their shares. In applying the rule to facts similar to the instant case it is stated in VI American Law of Property at page 125 as follows: "As to any child of A living at testator's death, this condition subsequent is valid, since it must occur in the life of such child, if at all. As to any child of A born after testator's death, the condition subsequent is invalid since A may marry a woman unborn at testator's death and the contingency may not occur until her death. Therefore, as to children born after testator's death, they have interests which

are not defeasible upon their respective deaths in the lives of A and his widow."

Item 9 provides, "If any of my son's children shall not be living at the time provided for the distribution to them of my estate as aforesaid, the share which would have gone to such child, if living, shall then be distributed to the lawful issue of such child, provided, however, that if such child should have died leaving no lawful issue, then that portion of my estate which would otherwise have been paid to such child shall be distributed equally among my son's other children or descendants of children, per stirpes." Item 10 provides, "In the event that at the time provided above for the final distribution of my estate, there should be no living children of my son surviving him, nor lawful issue of such children, I desire that my entire estate be distributed equally, share and share alike, among my sisters, Mrs. Cora L. Cofer, Mrs. Velma L. Hewett, and Mrs. Lillie L. Wages, or their descendants, per stirpes, and in the event that either sister should be dead leaving no descendants surviving her, then the share of such sister shall be divided equally, share and share alike between my other two sisters or their descendants, per stirpes."

In line with the foregoing authority, we hold that the condition subsequent is valid as to the two grandchildren of the testator in life at the time of his death, but is invalid as to any afterborn children. This leaves the two grandchildren with a vested beneficial interest subject to a valid condition subsequent. As to afterborn children the condition would be invalid, and on their births they will acquire a vested beneficial interest not subject to being divested.

■ Item 11 of the codicil provided, "In the event that any beneficiary under my will shall bring any action in any court to contest the validity of my will or of any provision thereof, any bequest or benefit set out in my will in behalf of such beneficiary shall be revoked and rescinded and the share of such beneficiary shall go pro rata to the remaining beneficiaries."

The plaintiff, as a beneficiary under the will, seeks a determination as to whether or not he forfeited his interest under the will in bringing the declaratory judgment action. *Code*

§ 113-820 provides, "A condition in terrorem shall be void, unless there is a limitation over to some other person; in which event the latter shall take. Conditions which are impossible, illegal, or against public policy shall be void." Here, the condition in terrorem imposes a forfeiture but with a limitation over, and certainly, it is obvious that this action contests the " . . . validity of my will or of any provision thereof, . . . " It cannot be said that such a provision violates public policy, and since the provision is otherwise valid under *Code* § 113-820, the interests of the plaintiff are voided by this suit. See *Cohen v. Reisman,* 203 Ga. 684 (48 SE2d 113).

*Judgment affirmed. All the Justices concur, except Duckworth, C. J., and Candler, J., who dissent.*

DUCKWORTH, Chief Justice, dissenting. A decision in this case which fails, as I believe the majority does, to clearly understand and conform to the true meaning and purpose of the rule against perpetuities (*Code Ann.* § 85-707(a)) is contrary to law. As recently as 1954 in *Landrum v. National City Bank of Rome,* 210 Ga. 316, 319 (80 SE2d 300), this court without a dissent said: "The purpose of the rule is to prevent the tying up of property for an indefinite period and thus destroying its salability. An interest such as is created under the will here in question, *even though it is vested* in a class that is subject to open so as to let in persons born during the existence of the preceding estate, just as effectively, ties up property and prevents it being freely sold as if the interests created were contingent. This is true because the estate can not be sold so as to bar the interests of the unborn members of the class. Also, in a case such as the instant one, the possibility is just as great that the interest created will not vest without being subject to being diminished within the time allowed by the rule against perpetuities, and thus tie up property and prevent its being freely sold for a period longer than is deemed desirable by the law as if the interest created were contingent." (Italics added). We thought the foregoing was sound when we approved it. No reason has been advanced with support by controlling law why it is not still sound. It simply means that any arrangement, irrespective of its form or name whereby property is tied up for

a period that is or can be longer than that stated in *Code Ann.* § 85-707(a) is violative of the rule and is void. When thus recognized for its true meaning it is obvious that a judicial or legal fiction of "vesting subject to divesting" in no respect frees an arrangement whereby the ultimate vesting with full power to alienate is or can be postponed for a longer time than the rule allows from being violative of the rule and void.

The will here involved provides that the estate be held, managed, invested, reinvested, and pledged as security by the trustees until the death of testator's wife and son, and the death or remarriage of any widow the son might have surviving, at which time, the estate to be distributed. There is positively no excuse for failing to see that this encompasses a period of time forbidden by *Code Ann.* § 85-707(a). Then follow directions as to who may take if others do not, depending upon who is in life at the remote time fixed for distribution. How could the trustee distribute until the distributee is known? How can that be known until the time arrives for such? How could the trustees distribute if the property had vested in others? I agree with counsel that *Burton v. Patton,* 162 Ga. 610 (134 SE 603), and *Dismukes v. Bagley,* 165 Ga. 665 (141 SE 902), demand a ruling here that there was no vesting that would avoid the rule against perpetuities, and consequently that rule is offended, and the provision so offending is void.

If resort is had to texts for a full explanation of the rule we believe the soundest expressions to be found in such works is found in Gray, Rule Against Perpetuities (4th Ed.), pp. 97, 99, 200, which is cited in the motion for a rehearing. I regret to see my associates ignore this citation without attempting to explain why they reject it.

For the foregoing reasons I dissent.